UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALEXEY NAZARENKO,

                Petitioner,

          v.

KENNETH GENALO, et al.,

                Respondents.
-----------------------------------------------------------------X

                           **MEMORANDUM
AND ORDER**
26-CV-3098-SJB

**BULSARA, United States District Judge:**

Petitioner Alexey Nazarenko ("Nazarenko"), a citizen of Russia who has lived in the United States since 2019, was arrested on May 21, 2026, by U.S. Immigration and Customs Enforcement ("ICE") officers at an asylum interview with the U.S. Citizenship and Immigration Services ("USCIS").  (Pet. for Writ of Habeas Corpus filed May 21, 2026 ("Pet."), Dkt. No. 1 ¶¶ 26, 32; Resp'ts' Letter filed May 25, 2026 ("Resp'ts' Letter"), Dkt. No. 8 at 1–2; Decl. of Henry Tsang ("Tsang Decl."), Dkt. No. 8-1 ¶¶ 1, 3, 12). Nazarenko was lawfully admitted into the United States on a visitor visa on April 4, 2019, and filed an application for asylum for himself and his family members on September 27, 2019.  (Pet. ¶¶ 26–27).

Nazarenko is seeking asylum due to political persecution in Russia.  He was an elected deputy of the Stavropol Territory Duma in Russia, which allegedly fabricated criminal proceedings against him and his family members, and also made a variety of other threats.  (*Id.* ¶ 37).  His asylum application has been pending for seven years.  (*Id.* ¶ 29).  And during that time, he has made every single one of his asylum and immigration appointments without fail.  (*Id.* ¶ 4).

Nazarenko's wife and three children (two of whom are minors) reside in the United States. (*Id.* ¶ 31). He has an established business in New York, which he relies on to provide for his family, and has paid his taxes. (*Id.* ¶¶ 35–36). Nazarenko has no criminal history. (Pet. ¶ 33).

As part of his asylum process, Nazarenko was directed to appear for an interview by USCIS. (*Id.* ¶ 28). It was during this interview, on May 21, 2026, that he was arrested by ICE. (*Id.* ¶ 32). The morning of the interview, ICE executed a warrant for arrest, an I-200, and a Notice to Appear ("NTA"), which placed him in removal proceedings. (Tsang Decl. ¶¶ 9–11). ICE "encountered" Nazarenko when he appeared at the USCIS Office, placed him under arrest, and transported him to the Nassau County ICE Intake Office. (*Id.* ¶ 12). An initial custody determination was conducted and two days later, on May 23, 2026, ICE executed a custody determination worksheet that detailed the reasons for his detention. (*Id.* ¶¶ 18, 21; *see also* Initial Custody Determination dated May 23, 2026 ("Custody Determination"), attached to Resp'ts' Mot. to Seal dated May 25, 2026 as Ex. 1, Dkt. No. 9-1).[1] He is currently detained at the Delaney Hall Facility in Newark, New Jersey. (Tsang Decl. ¶ 22).[2]

Section 1226(a) and its implementing regulations require ICE to make an individualized custody determination before exercising its discretion to detain an

---

[1] The Court has reviewed the document Respondents have filed in connection with the detention of Nazarenko. (*See* Resp'ts' Letter; Custody Determination). The Court will address the propriety of filing such a document under seal and in redacted form via separate order.

[2] Respondents have not objected to the venue for this habeas petition.

individual.[3]  *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025); *see also Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (collecting cases).  This custody determination requires an assessment "of whether [Petitioner] can demonstrate that he is neither a danger to persons or property, nor a flight risk."  *Pastrana-Beltran v. Mullin*, No. 26-CV-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing *Barbosa da Cunha v. Freden*, -- F.4th --, No. 25-3141, 2026 WL 1146044, at *4 (2d Cir. Apr. 28, 2026)).

Respondents assert that Nazarenko must remain in ICE custody "because he had not established that he did not present a danger to persons or property."  (Resp'ts' Letter at 2).  As discussed below, this custodial determination was legally flawed in numerous respects, reflects a stunning misuse of and reliance on Interpol notices, and violated due process.

Respondents contend that Nazarenko has been provided with all the due process to which he is entitled.  (*Id.* at 3).  But Respondents misunderstand the Court's inquiry.  "Rather than impermissibly pry behind the discretionary curtain, the Court

---

[3] ICE says it conducted an initial custody determination of Nazarenko "[d]uring processing" at the Nassau County ICE Intake Office on May 21, 2026, where Nazarenko arrived at approximately 12:00 noon.  (Tsang Decl. ¶¶ 13, 18).  The document attached indicates, however, that the custody determination took place at 11:10 am at the ICE Central Islip Sub Office.  (*See* Notice of Custody Determination, attached to Tsang Decl. as Ex. C, Dkt. No. 8-2).  Then Respondents provided an INA § 236(a) "Initial Custody Determination Form," dated two days later, which actually contains the basis for Nazarenko's detention.  Respondents refer to this as an "amended" custody worksheet, (Tsang Decl. ¶ 21), but fail to provide the original, or any indication of how it was amended or when the original was executed.  All of this suggests Respondents failed to properly follow procedures or the requirements of a pre-detention custody determination, and post-detention attempts to correct prior errors.  If so, there would be yet another bases to grant the writ.

assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." *Pastrana-Beltran*, 2026 WL 1398609, at *3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). "[The Supreme Court's decision in] *Wilkinson* compels the conclusion that application of the 'dangerousness' standard" presents an issue "reviewable" by federal courts, specifically, the application of "'the statutory standard to a given set of facts.'" *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)).

The sole basis for concluding that Nazarenko should remain in custody was that he "is wanted by INTERPOL in Russia for the crime of Fraud if convicted he faces up to 10 years in prison." (Custody Determination at 1). This turns out to be false. And either ICE deliberately misstated facts or failed to investigate them before detaining Nazarenko.

The Court directed Respondents to provide the document that ICE relied upon to conclude that Nazarenko is wanted by Interpol. (Order dated May 25, 2026). In response, Respondents submitted a letter indicating that Interpol's notice was not a "Red Notice," but what was known as a "Diffusion." (Resp'ts' Letter dated May 26, 2026, ("Resp'ts' May 26, 2026 Letter"), Dkt. No. 10 at 1). "A 'diffusion' is a request for cooperation that is processed through each Interpol member country's national central bureau and, while less formal than a Red Notice, it seeks the arrest of a wanted person

4

with a view towards extradition."  *United States v. Khan*, 575 F. Supp. 3d 490, 496 n.3 (S.D.N.Y. 2021) (quotation omitted).[4]

The remarkable thing is that Respondents now concede—days after Nazarenko was detained and only after the Court directed production of the document—that "*the Diffusion is not currently active*," and has not been since March 2026.  (Resp'ts' May 26, 2026 Letter at 1 (emphasis added)).  (In fact, the document states "Warning.  File under review[.]"  (Interpol Diffusion, attached to Resp'ts' May 26, 2026 Letter as Ex. 1, Dkt. No. 10-1 at 1).)  Nonetheless, it was the sole basis for concluding that Nazarenko was a danger to the community and could not be released.

There is more.[5]  The diffusion notice—when it was valid—was issued back in 2019.  (*Id.* at 2).  In the almost seven years since the notice was issued, Nazarenko has appeared for repeated check-ins with immigration authorities related to his pending asylum application.  (Pet. ¶ 4).  And his ties to the United States have grown stronger, having established a business, enrolled his children in school here, and never engaging in criminal conduct.  It is confounding how, after the passage of years, the diffusion notice (an inactive one no less), now could be the sole basis to conclude that Nazarenko

---

[4] This Court has ruled in another case that Red Notices—which differ from diffusion notices—cannot be the purported basis for arrest and detention by ICE.  *See Yeleshev v. LaRocco*, No. 26-CV-2294, 2026 WL 1353806, at *5–*6 (E.D.N.Y. May 14, 2026) ("A Red Notice confers no detention authority, and no provision of the Immigration and Nationality Act ('INA') permits detention of an individual based solely upon a Red Notice.").

[5] As noted, the diffusion's purpose is to enable extradition.  The United States has no extradition treaty with Russia.  *See* 18 U.S.C. § 3181, https://perma.cc/ZKD9-BHWX (listing countries with which the United States has extradition agreements).

is a danger to the community.  The more straightforward inference is that the custodial determination conducted by ICE was a sham.

The process appears to have violated ICE's own internal regulations and guidance regarding Interpol notices.  ICE personnel may not "rely exclusively on Red Notices or Wanted Person Diffusions to justify enforcement actions or during immigration proceedings."  ICE Directive 15006.1 (Aug. 15, 2023) ¶ 2, https://perma.cc/N2CG-BX2A.  And "[t]he *first* thing ICE personnel must do upon learning about the existence of a Red Notice or Wanted Person Diffusion is . . . to verify that it remains active and has not been suspended, withdrawn, or expired.  ICE personnel *cannot use suspended, withdrawn, or expired Red Notices or Wanted Person Diffusions.*"  *Id*. ¶ 5.1 (emphasis added).

"[A] Red Notice is not independently vetted for factual and legal justification, its reliability corresponds with that of the foreign nation's arrest warrant."  *Yeleshev*, 2026 WL 1353806, at *5 (quoting *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 978 (9th Cir. 2022)).  Here the diffusion—which is not even a Red Notice—was issued by Russia, a country known to abuse the Interpol notice process.  *See id.* at *5 n.7 (citing Cate Brown, Max Hudson, & Julia Luft, *Russia Using Interpol's Wanted List to Target Critics Abroad, Leak Reveals,* BBC (Jan. 25, 2026), https://perma.cc/5ADV-EL7A (reporting that "Russia is using Interpol's wanted lists to request the arrest of people such as political opponents  . . . claiming that they have committed crimes")).  In this case, Nazarenko had an asylum application that indicated the criminal cases initiated against him by

6

Russia were politically motivated and retaliatory.  (*See* I-589 dated Feb. 17, 2026, attached to Pet. as Ex. IV, Dkt. No. 1-2 at 5–6).[6]

In such a situation, ICE guidance requires an officer to request additional information to make sure that the notice does not violate Interpol's rules, consult with the Department of Justice, "[r]esearch the person" and the notice to determine "whether there are indicia that the person may be the target of retaliation, harassment, or persecution."  ICE Directive 15006.1 ¶ 5.2.  Such inquiries or investigation do not appear to have been done—at least none are disclosed in the custody determination form or the documents filed by Respondents.

Despite its own directive to view Interpol notices like the present one skeptically, and to disregard invalid ones, ICE used Nazarenko's inactive diffusion notice to conclude he was dangerous.  But an Interpol notice initiated by Russia—and its attendant lack of reliability—suggesting that a person committed fraud, does not on its face, and certainly standing alone, suggest dangerousness, particularly when it is an inactive one.  *Cf. Yan Lu v. Los Angeles Field Dir.*, No. 26-CV-0575, 2026 WL 1455320, at *12 (C.D. Cal. Apr. 15, 2026) ("[While] the Red Notice and arrest warrant 'could affect'

---

[6] Nazarenko filed an asylum application in 2019 and appears to have filed a second application in 2026.  (*See* I-797 Notice of Action dated Oct. 1, 2019, attached to Pet. as Ex. III, Dkt. No. 1-2; I-589 dated Feb. 17, 2026).  The Court has not been provided with the earlier application, though neither side contests that the earlier application remains pending.  Additionally, according to the USCIS Case Status Platform, when inputting the receipt number corresponding to the 2019 application, (*see* I-797 Notice of Action), the "[d]ecision is pending" and the interview has been completed.  *See* https://egov.uscis.gov (search conducted under corresponding receipt number, May 26, 2026)).  It is the second application, filed months before his present arrest and detention that references the retaliatory nature of the criminal process initiated by Russia.  (I-589 dated Feb. 17, 2026 at 5–6).

7

Petitioner's eligibility for asylum relief, that finding is not legally sufficient to meet the clear and convincing evidence standard."); *see also G.R.R. v. Hermosillo*, No. 26-CV-0097, 2026 WL 395268, at *5 (W.D. Wash. Feb. 12, 2026) (noting Red Notice reliance, standing alone, for dangerousness determination violates due process).  In fact, ICE's own form—the one it used in this case—requires it to consider a bevy of additional factors:

> the extensiveness and seriousness of any criminal arrest or conviction; the length of time that has passed since any such arrest or conviction; the sentences imposed; criminal history not known to the immigration officer but disclosed by the noncitizen; statements from the noncitizen regarding dangerousness or illegal conduct; evidence of rehabilitation; compliance with sentences; employment history and ties to the community.[7]

(Custody Determination at 1).  These criteria—Nazarenko's lack of criminal history, his seven-year compliance with asylum and immigration appointments, family and business ties—were plainly not considered.  And ICE's failure to do so requires granting the writ.  *See Inestroza Carbajal v. Frazier*, No. 26-CV-2778, 2026 WL 1309265, at *4 (E.D.N.Y. May 12, 2026) (granting habeas petition where the Government could not explain why petitioner was a flight risk or a danger to the community, "[o]ther than in conclusory fashion" and noting that his "decades long presence in the United States and lack of criminal history suggest neither is the case"); *Karpov v. Santacruz*, No. 26-CV-2182, 2026 WL 1334835, at *1 (C.D. Cal. May 8, 2026) (granting release where, "[w]ithout providing any detail, the IJ's order denying bond stated that bond was denied because 'Risk of flight.  Outstanding Interpol Diffusion order/arrest warrant'").

---

[7] No immigration statute defines "dangerousness," but ICE has cited similar factors to federal courts as the ones applicable to the inquiry.  *See Martinez v. Clark*, 36 F.4th 1219, 1228-29 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)), *judgment vacated*, 144 S. Ct. 1339 (2024).

As further evidence—though none is necessary—of the botched custody evaluation is the fact there is no indication that flight risk was even evaluated. (Custody Determination at 2 (marking neither "yes" nor "no" as to whether the individual poses a flight risk and providing no discussion)).  And then there are the potential other elements that should be considered in making a custody determination—including vulnerabilities that would counsel in favor of release.  The form also marks both "yes" and "no" as to whether the officer had identified a "special vulnerability," making no reference to what that vulnerability would be and how it factored, if at all, into the custody determination.  (*Id.* at 2).[8]

This cavalcade of errors—the conclusory evaluation; the exclusive reliance on a diffusion notice alone for a dangerousness evaluation; the failure to consider other factors about Nazarenko's background, presence, and criminal history; and the failure to consider any special vulnerabilities—demonstrate that Nazarenko was not provided with the process to which he is entitled, rendering his detention invalid.  *See Curimilma Quille v. Blanche*, No. 26-CV-2818, 2026 WL 1453889, at *5 (E.D.N.Y. May 22, 2026) (granting release given ICE's several inaccuracies in the initial custody determination as they "demonstrate[] not only a high risk of the erroneous deprivation of Petitioner's liberty interest, but also, the actual erroneous deprivation of that interest").

*            *            *

---

[8] Presumably, this refers to Nazarenko's medical conditions, (*see* Pet. ¶ 41 (detailing, among other things, his ongoing mental health treatment for PTSD and spinal pain control therapy for an injury sustained during an assault in Russia)), or his asylum claim, but the Court cannot determine which on this record.

The preceding discussion demonstrates why Nazarenko's detention violates due process. But there is a separate and independent ground to conclude that his arrest was also likely illegal and violated due process.

On May 21, 2026, ICE placed Nazarenko into removal proceedings, which as the name suggests, are intended to effectuate his removal from the United States. (*See* Notice to Appear, attached to Resp'ts' Letter as Ex. B, Dkt. No. 8-2). Yet, the I-797 Notice of Action USCIS issued in 2019 to him, states unequivocally "[y]ou may remain in the U.S. until your asylum application is decided." (I-797 Notice of Action). For ICE to now arrest Nazarenko—with full knowledge of his asylum application, at an asylum interview no less, after advising him that he could remain here without the threat of removal while that application was pending, and in the absence of any changed circumstances—is a form of misconduct. And "affirmative misconduct by the Government may create an estoppel against the Government in immigration cases." *Akbarin v. Immigr. & Naturalization Serv.*, 669 F.2d 839, 843 (1st Cir. 1982) (collecting cases); *see also Corniel-Rodriguez v. Immigr. & Naturalization Serv.*, 532 F.2d 301, 306 (2d Cir. 1976) ("[T]his court and others have held that the Government's improper actions may preclude it from deporting an alien, even if the language of the Immigration & Nationality Act, read in vacuo, might suggest a difference result."); *e.g., Alfaro v. Mullin*, No. 26-CV-0766, 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026) ("As the recipient of an unexpired period of deferred action and a valid work authorization from USCIS—by which the agency committed to take no steps to effect his removal and permitted him to work in the U.S.—Petitioner could not lawfully be arrested and detained by ICE,

10

particularly in absence of changed circumstances and without notice or opportunity to be heard.").

Respondents are directed to effectuate Nazarenko's release by **May 26, 2026 at 10:00 P.M.** and file a letter on the docket confirming Nazarenko's release by that time. Respondents are enjoined from detaining Nazarenko absent further direction from this Court.  Respondents may not use ICE ankle monitors or similar technology to monitor Nazarenko, because in this Order the Court provisionally grants the writ.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  May 26, 2026
Central Islip, New York

11